UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| SAMET BIDERATAN, | ) |
| | ) |
| Plaintiff, | ) No. C08-1853-RAJ-BAT |
| v. | ) |
| | ) **REPORT AND** |
| RICHARD PENNINGTON, | ) **RECOMMENDATION** |
| | ) |
| Defendant. | ) |
| | ) |

## I. INTRODUCTION

Plaintiff Samet Bideratan filed a Complaint under 42 U.S.C. § 1983 naming Richard Pennington, Sarah B. Schaelt, and "unknown wound care provider" as defendants. Dkt. 4. The Court previously dismissed plaintiff's claims against defendants Sarah B. Schaelt and "unknown wound care provider" for failure to provide sufficient information to effectuate service. Dkt. 17. Defendant Richard Pennington has moved for summary judgment. Dkt. 19. Plaintiff has filed no opposition to this motion. After careful consideration of defendant's Motion for Summary Judgment, and the balance of the record, the Court recommends that defendant's motion be **GRANTED** and that plaintiff's claims be **DISMISSED** with prejudice.

## II. BACKGROUND

**A. Plaintiff's Allegations**

On January 9, 2009, plaintiff filed a complaint under 42 U.S.C. § 1983 alleging that Richard

REPORT AND RECOMMENDATION – 1

Pennington, Sarah B. Schaelt, and "unknown wound care provider" were deliberately indifferent to his medical needs and that Richard Pennington and Sarah B. Schaelt failed to supervise the "unknown wound care provider." Dkt. 4 at 3. These claims arise from plaintiff's having contracted a methicillin-resistant Staphylococcus aureus ("MRSA") skin infection while an inmate at the King County Regional Justice Center ("RJC"). *Id*.

On August 22, 2008, plaintiff was seen by an "unknown wound care provider" who concluded that plaintiff's condition did not warrant immediate treatment. *Id*. at 3. On August 23, 2008, plaintiff was taken to Harborview Medical Center ("HMC") for what he alleges was a five-hour emergency surgery on his left arm, necessary to prevent the arm from having to be amputated. *Id*.[1]

On November 6, 2008, plaintiff filed an inmate medical grievance form on which he wrote: "My arm is hurting. It is going numb, and it is also very weak. I think the staff is not addressing my medical needs. I'm in great pain." Dkt. 4 at 5.

On November 20, 2008, defendant Richard Pennington responded: "The last visit you had was with the wound care provider on 9/30/08. If you are still having problems please go to triage to be assessed by the nurse." *Id*.

Regarding defendant Richard Pennington, plaintiff's claim states in relevant part:

> I have put grievances in to medical complaining about my treatment from the wound care provider and staff. Richard Pennington PHSS-4417 [is] to provide supervision and to also provide supervision as to training for this unknown wound care provider.

Dkt. 4 at 3.

---

[1] Defendant characterized the procedure as less serious: "JHS [Jail Health Services] Medical records indicate that the plaintiff was seen at HMC on 8/23/08 for an incision and drainage procedure on his left arm and that he was returned to the King County Jail that day." Dkt. 19 at 2, n. 1.

REPORT AND RECOMMENDATION – 2

**B. Defendant's Motion For Summary Judgment**

On September 14, 2009, defendant filed a motion for summary judgment under Fed. R. Civ. P. 56 supported by declarations from defendant and his attorney. Dkt. 19. In his declaration, defendant states he is a personal health services supervisor for Jail Health Services, which provides healthcare for King County Department of Adult and Juvenile Detention inmates. In this role, defendant responds to inmate medical grievance forms. Dkt. 19, ex. 2 at 2. Defendant is required to respond to grievances within ten working days of receiving them.

Defendant further states that upon receiving plaintiff's grievance, he reviewed plaintiff's Jail Health Services medical charts and determined that plaintiff had last visited a wound care provider on September 30, 2008. *Id.* Defendant responded to plaintiff's grievance, writing: "[t]he last visit you had was with the wound care provider on 9/30/08. If you are still having problems please go to triage to be assessed by the nurse." Dkts. 4 at 5; 19, ex. 2 at 2. Defendant states that "[a]bsent a medical emergency requiring immediate response, reporting for triage call is the fastest way for inmates to receive medical attention." Dkt. 19, ex. 2 at 3. Defendant responded to plaintiff's grievance within ten working days. *Id.* at 2.

Defendant states that to the best of his recollection, and based on the medical chart notes, the instant grievance response is the only contact he has had with plaintiff. *Id*.

### III. ANALYSIS

**A. Standard of Review**

Summary judgment should be granted when "the pleadings . . . together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S.

REPORT AND RECOMMENDATION – 3

317, 322 (1986). An issue of fact is "genuine" if it constitutes evidence with which "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986).

The moving party can carry its initial burden by establishing that the nonmovant lacks the quantum of evidence needed to satisfy his burden of persuasion at trial. *Block v. City of Los Angeles*, 253 F.3d 410, 416 (9th Cir. 2001). Once this has occurred, the procedural burden shifts to the party opposing summary judgment. That party must go beyond the pleadings and must "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *Anderson*, 477 U.S. at 248-49. The nonmoving party's failure of proof "renders all other facts immaterial," creating no genuine issue of fact, and thereby entitling the moving party to the summary judgment it sought. *Celotex Corp*., 477 U.S. at 323.

The Court's pretrial scheduling order and amended pretrial scheduling order advised plaintiff of what he must do to oppose a motion for summary judgment:

> When a party you are suing makes a motion for summary judgment that is properly supported by declarations (or other sworn testimony), you cannot simply rely on what your complaint says. Instead, you must set out specific facts in declarations, depositions, answers to interrogatories, or authenticated documents, as provided in Rule 56(e), that contradict the facts shown in the defendant's declarations and documents and show that there is a genuine issue of material fact for trial. If you do not submit your own evidence in opposition, summary judgment, if appropriate, may be entered against you. If summary judgment is granted, your case will be dismissed and there will be no trial.

Dkts. 10, 18; *see also Rand v. Rowland*, 154 F.3d 952, 962-63 (9th Cir. 1998). Furthermore, the order advised plaintiff that, under Local Rule CR 7(b)(2), a party's failure to file necessary documents in opposition to a motion for summary judgment may be deemed by the court to be an admission that the opposition is without merit. Dkts. 10, 18. Plaintiff did not file a brief in

REPORT AND RECOMMENDATION – 4

opposition to defendants' motion as Local Rule CR 7(b)(2) requires. Accordingly, the Court may deem plaintiff to have admitted that the motion has merit. Even if the Court does not make this assumption, plaintiff has not submitted to the Court any facts demonstrating a genuine issue for trial. *See Anderson*, 477 U.S. at 248. Thus, summary judgment is appropriate if defendants have shown that they are entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c).

Plaintiff's claims are made pursuant to 42 U.S.C. § 1983. In order to sustain a § 1983 claim, plaintiff must show that (1) he suffered a violation of rights protected by the Constitution or created by federal statute, and (2) the violation was proximately caused by a person acting under color of state or federal law. *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991).

**B. Plaintiff has not established supervisory liability.**

Plaintiff claims that defendant is liable as a supervisor. Specifically, he alleges defendant failed to properly supervise, and supervise the training of, the "unknown wound care provider." Dkt. 4 at 3.

A defendant cannot be found liable under § 1983 solely on the basis of supervisory liability or respondeat superior. *See Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1948 (2009); *Monell v. Dept. of Soc. Services*, 436 U.S. 658, 691 (1978). In a § 1983 claim, "a supervisor is liable for the acts of his subordinates 'if the supervisor participated in or directed the violations, or knew of the violations of subordinates and failed to act to prevent them.'" *Preschooler II v. Clark County Sch. Bd. of Trustees,* 479 F.3d 1175, 1182 (9th Cir. 2007) (quoting *Taylor v. List,* 880 F.2d 1040, 1045 (9th Cir. 1989)). Plaintiff must plead facts showing that defendant, through his own actions, has violated the Constitution. *Ashcroft*, 129 S.Ct. at 1948. Plaintiff has failed to do so.

Plaintiff's claims are based on the medical care he received from an "unknown wound care provider" on August 22, 2008. Dkt. 4 at 3. However, there is no evidence that defendant

REPORT AND RECOMMENDATION – 5

supervised the caregiver, or participated in or directed the medical care provided that day. There is no evidence that defendant was responsible for supervising or training the "unknown wound care provider." There is no evidence that defendant had any knowledge of plaintiff's medical problems or treatment on August 22, 2008.

Accordingly, because there is no evidence defendant participated in or knew about the violations of a subordinate and failed to act to prevent them, plaintiff's claim against defendant should be dismissed.

### C. Plaintiff Has Not Established Defendant was Deliberately Indifferent.

Plaintiff claims that medical staff members were deliberately indifferent to his medical needs. Dkt. 4 at 3. The Court construes this claim as alleging an Eighth Amendment violation. To prevail on this claim, plaintiff must prove a defendant was "deliberately indifferent" to a serious risk of harm to his well-being. *Wilson v. Seiter*, 501 U.S. 294, 302-04 (1991). Defendant may be held liable only if he knew that plaintiff faced "a substantial risk of serious harm and disregard[ed] that risk by failing to take reasonable measures to abate it." *Farmer v. Brennan*, 511 U.S. 825, 847 (1994).

Deliberate indifference may be found where prison officials "deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care." *Hutchinson v. United States*, 838 F.2d 390, 394 (9th Cir. 1988). The indifference, however, must be substantial; inadequate treatment due to negligence, inadvertence or differences in judgment between an inmate and medical personnel do not rise to the level of a constitutional violation. *See id.*; *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989).

Prison officials may be free from liability if they "responded reasonably" to a known risk; a dispute, in hindsight, over the existence of arguably superior alternatives does not raise a triable

issue of fact as to whether the defendants were deliberately indifferent. *See Farmer*, 511 U.S. at 844; *Berg v. Kincheloe*, 794 F.2d 457, 462 (9th Cir. 1986).

After carefully reviewing plaintiff's allegations, the Court concludes plaintiff's claim of deliberate indifference should be dismissed.

First, plaintiff fails to state which jail medical staff member was deliberately indifferent to his medical needs.

Second, there is no evidence that defendant Pennington was involved in or had knowledge of the care plaintiff received on August 22, 2008. Thus, there is no evidence that defendant Pennington proximately caused any injury plaintiff suffered in August 2008. Further, plaintiff has not established that he faced a serious risk of harm in November 2008, when he submitted the inmate medical grievance to defendant Pennington.

And third, there is no evidence that defendant Pennington was deliberately indifferent to plaintiff's Jail Health Services medical needs. Pennington's sole contact with plaintiff was responding to plaintiff's grievance in November 2008. The evidence establishes that defendant timely responded to plaintiff's grievance (Dkt. 4 at 5) and that his response to was reasonable: he reviewed plaintiff's jail health services medical records, and saw nothing to indicate that plaintiff faced a medical emergency and referred him to the triage nurse for assessment. Dkt. 19, ex. 2 at 2-3. As defendant stated in his declaration, "[a]bsent a medical emergency requiring immediate response, reporting for triage call is the fastest way for inmates to receive medical attention." *Id.* at 3. Plaintiff has submitted nothing disputing this. Thus, there is no evidence that defendant denied, delayed, or interfered with plaintiff's medical treatment, or was deliberately indifferent in any way.

Accordingly, because there is no evidence defendant was deliberately indifferent to plaintiff's medical needs, plaintiff's claims against defendant should be dismissed.

**D. Qualified Immunity**

Defendant also argues summary judgment should be granted because he is entitled to qualified immunity from suit. Dkt. 19. The Court's determination that there is no basis for plaintiff's claims renders this argument moot.

### III. CONCLUSION

For the reasons set forth above, the Court recommends that defendant's motion for summary judgment be **GRANTED** and that plaintiff's claims against all defendants be **DISMISSED**. A proposed order accompanies this Report and Recommendation.

DATED this 6th day of November, 2009.

BRIAN A. TSUCHIDA
United States Magistrate Judge